**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **JON BANGASH,** | § | **CASE NO. 16-41526-btr** |
| | § | **Chapter 11** |
| **Debtor.** | § | |

## JON BANGASH'S THIRD AMENDED PLAN OF REORGANIZATION
## DATED SEPTEMBER 7, 2018

Jon Bangash (the "Debtor"), proposes the following Third Amended Plan of Reorganization ("Plan") Dated September 10, 2018, pursuant to Chapter 11 of the United States Bankruptcy Code on behalf of the Debtor. The Debtor's profitability to fund the Plan is based on the amount of money that she will earn through the continued operations of owning rental properties. The Debtor shall file periodic financial reports with the Court, as required by the Code, covering the Debtor's profitability, projections of cash receipts and disbursements for a reasonable period and a comparison of actual cash receipts and disbursements with projections in prior reports. These reports shall be available on the Court's PACER site at www.txeb.uscourts.gov using the Debtor's name and/or case number as referenced above.

# TABLE OF CONTENTS

ARTICLE I: DEFINITIONS AND USE OF TERMS .................................................................... 3

ARTICLE II: CONCEPT OF THE PLAN ................................................................................. 7

ARTICLE III: GENERAL TERMS AND CONDITIONS ............................................................ 7

ARTICLE IV: DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS ...................... 8

ARTICLE V: PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS ............. 8

    TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSES ............................................. 9

    TREATMENT OF ALLOWED PRIORITY CLAIMS ........................................................... 9

    TITLE 28 U.S.C. SECTION 1930 FEES ..................................................................... 9

    CLAIMS AGAINST JON BANGASH, 16-41526-BTR ...................................................... 10

        *Class 1: Allowed Administrative Claims* ................................................................. *10*

        *Class 2: Allowed Secured Claims of Ad Valorem Taxing Authorities* .................................... *8*

        *Class 3: Allowed Secured Claims of Propel Financial Services, LLC* ................................. *11*

        *Class 4: Allowed Priority Claim of the Internal Revenue Service* ....................................... *13*

        *Class 5: Allowed Secured Claim of Deutsche Bank – 1403 Travis Cir – Homestead* .......... *14*

        *Class 6: Allowed Secured Claim of Westbound Bank* ...................................................... *14*

        *Class 7: Allowed Secured Claim of First National Bank of Burleson* ................................. *16*

        *Class 8: Allowed Secured Claim of National Bank of Texas* ............................................... *17*

        *Class 9: Allowed Unsecured Non-Dischargeable Claim of John Pappas* ............................. *18*

        *Class 10: Allowed General Unsecured Claims* .............................................................. *18*

        *Class 11: Individual Debtor* ....................................................................................... *19*

ARTICLE VI: MEANS FOR IMPLEMENTATION OF PLAN .................................................. 19

ARTICLE VII: TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
.................................................................................................................................. 20

ARTICLE VIII: ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS ........ 21

ARTICLE IX: EFFECT OF CONFIRMATION ..................................................................... 22

ARTICLE X: MISCELLANEOUS PROVISIONS .................................................................... 22

ARTICLE XI: MODIFICATION OF THE PLAN .................................................................... 24

ARTICLE XII: RETENTION OF JURISDICTION ................................................................. 24

# ARTICLE I:
## DEFINITIONS AND USE OF TERMS

**1.01    Defined Terms**.  Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this section 1.01.

**1.01.01   Administrative Claim or Expense** means an administrative expense or Claim described in Section 503 of the Bankruptcy Code and entitled to administrative priority pursuant to Section 507(a)(1) of the Bankruptcy Code, including, but not limited to, Claims for compensation of professionals made pursuant to Sections 330 and 331 of the Bankruptcy Code, and all fees and charges assessed against the Debtor and Debtor's property under 28 U.S.C. Section 1930.

**1.01.02   Administrative Tax Claim** means an Unsecured Claim by any governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

**1.01.03   Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (i) a proof of Claim, proof of Interest, or request for payment was timely Filed or, with leave of the Bankruptcy Court, late Filed, and as to which no objection has been timely Filed or, if Filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely Filed or, if Filed, is allowed by a Final Order.

**1.01.04   Allowed Secured Claim** means any Allowed Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.05   Bankruptcy Code or Code** means the United States Bankruptcy Code, Title 11 of the United States Code Section 101 et seq., as amended.

**1.01.06   Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division or such other court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

**1.01.07   Bankruptcy Rule** means the Federal Rules of Bankruptcy Procedure.

**1.01.08   Bar Date** means subsequent to which a proof of pre-petition Claim may not timely be Filed or the date by which proofs of claims held by governmental agencies must be filed.

**1.01.09   Case** means this Chapter 11 Bankruptcy Case in the Bankruptcy Court.

**1.01.10   Claim** shall have the meaning set forth in Bankruptcy Code Section 101(5).

**1.01.11** **Claimant** means any person or entity having or asserting a Claim in the case.

**1.01.12** **Class** or **Classes** mean all of the holders of Claims or Interests that the Debtor has designated pursuant to Section 1123(a)(1) of the Bankruptcy Code as having substantially similar characteristics as described in Article IV of this Plan.

**1.01.13** **Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

**1.01.14** **Confirmation Date** means the date on which the Confirmation Order is entered.

**1.01.15** **Confirmation Hearing** means the hearing or hearings held before the Bankruptcy Court in which the Debtor will seek Confirmation of this Plan.

**1.01.16** **Confirmation Order** means the Order of the Court confirming this Plan under Section 1129 of the Bankruptcy Code.

**1.01.17** **Contested** when used with respect to a Claim, means a Claim against the Debtor (a) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (b) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

**1.01.18** **Creditor** shall have the meaning specified by Section 101(9) of the Code.

**1.01.19** **Debtor** means Jon Bangash.

**1.01.20** **Disputed Claim** means any Claim that is not an Allowed Claim.

**1.01.21** **Effective Date** means thirty days after the Confirmation Date.

**1.01.22** **Estate** means the estate created pursuant to Bankruptcy Code Section 541 with respect to the Debtor.

**1.01.23** **Fee Claim** means a Claim under Bankruptcy Code Sections 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the Debtor's Chapter 11 case.

**1.01.24** **Filed** means delivered to the Clerk of the Bankruptcy Court.

**1.01.25** **Final Order** means an Order as to which any appeal that has been taken has not

been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

**1.01.26**   **General** **Unsecured** **Claim** means Unsecured Claim that is not entitled to priority under Section 507(a) of the Bankruptcy Code.

**1.01.27**   **Impaired** means the treatment of an Allowed Claim pursuant to the Plan <u>unless</u>, with respect to such Claim, either (I) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim as such maturity existed before such default; (C) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (iii) the Plan provides that on the Effective Date, the holder of such Claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

**1.01.28**   **Pappas Litigation**   means cause no. 11-16090 in the 193rd Judicial District Court for Dallas County, Texas, styled *John Pappas v. Wash Technologies of America Corporation* where   judgment rendered by the trial court in the Pappas Litigation based on separate jury verdicts rendered on March 29, 2016 in which the jury granted (a) judgment in the amount of $1,197,397.00 for Pappas that (i) Wash Tech and Bangash breached agreements with Pappas and (ii) committed statutory fraud against Pappas with actual awareness of the fraudulent actions and conduct; (b) denying all claims that Pappas committed any fraud against Wash Tech or Bangash; and (c) awarding Pappas punitive damages for fraudulent actions in the amount of $1,500,000.00 against Wash Tech and $2,000,000.00 against Bangash; (d) attorneys' fees awarded to Pappas by the trial court, including fees for applicable appellate action; (e) prejudgment interest; and (f) post judgment interest.

**1.01.29**   **Petition** **Date** means August 29, 2016, the date the Involuntary Petition was filed commencing this bankruptcy case.

**1.01.30**   **Plan** means this Plan of Reorganization, as it may be amended or modified from time to time as permitted herein and by the Bankruptcy Court.

**1.01.31**   **Pre-petition** means prior to the Petition Date.

**1.01.32**   **Priority** **Tax** **Claim** means a Claim entitled to priority pursuant to Bankruptcy Code Section 507(a)(8).

**1.01.33**   **Pro Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.01.34** **Property** **of** **the** **Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in Bankruptcy Code Section 541.

**1.01.35** **Rejection** **Claim** means any Claim arising pursuant to Bankruptcy Code Section 502(g) by reason of rejection by the Debtor of an executory contract or unexpired lease pursuant to Bankruptcy Code Sections 365 or 1123(b)(2).

**1.01.36** **Secured** **Claim** means any Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.37** **Secured** **Tax** **Claim** means any Tax Claim which is secured by real or personal property.

**1.01.38** **Secured** **Creditor** or **Secured** **Claimant** means any Claimant holding a Secured Claim.

**1.01.39** **Unimpaired** means not Impaired.

**1.01.40** **Unsecured** **Claim** means any Claim not collateralized (or the extent not fully collateralized) by assets of the Debtor.

**1.01.41** **Unsecured** **Claimants** or **Unsecured** **Creditors** means any holder of an Unsecured Claim.

**1.01.42** **Voidable** **Transfer** means all transfers voidable under Sections 544, 545, 547, 548, 549 and/or 550 of the Code or any other state or federal transfer.

**1.01.43** **Wash** **Technologies** refers to the Chapter 11 bankruptcy pending in the Eastern District of Texas, captioned *In re Wash Technologies of America Corp*, Case No. 15-40917.

**1.02** **Number** **and** **Gender** **of** **Words**.  Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

**1.03** **Terms** **Defined** **in** **the** **Bankruptcy** **Code**.  Capitalized terms not specifically defined in section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

**1.04** **Headings**.  The headings and captions used in this Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

**1.05** **Time** **Computation.**  In computing any period of time prescribed herein, the provisions of Federal Rule of Bankruptcy Procedure Rule 9006(a) shall apply.

## ARTICLE II:
## CONCEPT OF THE PLAN

**2.01    Generally.**  The Plan is a plan of reorganization The Plan will be funded from the continuing operations of the Debtor's businesses that provide him with regular income.

**2.02**    During the five-year term of the Plan, the Debtor will continue to earn income through Consolidated C-Stores by managing the business and the management of the real property located at 1717 W. Walnut Hill and 3100 Las Vegas Trail.

## ARTICLE III:
## GENERAL TERMS AND CONDITIONS

**3.01    Treatment of Claims.**  This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive treatment afforded by the Plan.  The Plan is designed to ensure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02    Time for Filing Claims.**  The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date.  At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim.  Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Debtor's counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtor.

**3.03    Modification to the Plan.**  In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified or amended upon application of the Debtor, or corrected prior to the Confirmation Date, provided that notice and an opportunity for hearing have been given to any affected party. The Plan may be modified at any time after Confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of

sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, the circumstances warrant such modification and Debtor consents thereto in writing.  Since the Debtor is an individual, the plan may be modified at any time after confirmation of the plan, but before the completion of payments under the plan, whether or not the plan has been substantially consummated upon request of the debtor, the trustee, the United States Trustee, or the holder of an allowed unsecured claim, to - (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan; (2) extend or reduce the time period for such payments; or (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim made other than under the plan.

## ARTICLE IV:
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Debtor designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123.  The Debtor shall pay all fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Debtor is otherwise released from such obligations by the Court.

| Class | Creditor | Claim Amount |
|---|---|---|
| Class 1 | Allowed Priority Administrative Claims | $30,000.00 |
| Class 2 | Ad Valorem Taxing Authorities | $62,215.48 |
| Class 3 | Allowed Secured Claims of Propel Financial Services | $70,438.74 |
| Class 4 | Allowed Priority Claim of the Internal Revenue Service | $0.00 |
| Class 5 | Allowed Secured Claim of Deutsche Bank | $357,749.29 |
| Class 6 | Allowed Secured Claim of Guaranty Bank and Trust | $1,909,483.26 |
| Class 7 | Allowed Secured Claim of First National Bank of Burleson | $282,822.65 |
| Class 8 | Allowed Secured Claim of National Bank of Texas | $37,595.40 |
| Class 9 | Allowed Unsecured Punitive Damage Claim of John Pappas | $2,000,000.00 |
| Class 10 | General Unsecured Claims, including portion of Claim of John Pappas that is not included in Class 9 | $2,878,361.92[1] |
| Class 11 | Individual Debtor | n/a |

## ARTICLE V:
## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

---

[1] This Class  includes the unsecured claim of John Pappas.

The Claims and Interests classified in Article IV hereof shall be treated in the manner set forth in this Article V.

**5.01   Administrative Claims**.   Each holder of an Administrative Claim other than Professional Fee Administrative Claims shall receive, in full satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Administrative Claim, (i) Cash equal to the unpaid portion of such Allowed Administrative Claim or (ii) such other treatment as to which the Debtor and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims with respect to liabilities incurred by the Debtor in the ordinary course of business during the Bankruptcy Case shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.   On or before the Effective Date, the Debtor shall pay or have paid in full all Allowed Administrative Claims for the Effective Date shall be paid by the Reorganized Debtor when they are due until the Bankruptcy Case is closed pursuant to a final decree, order of dismissal, or order of conversion. Until entry of such an order, the Reorganized Debtor shall file with the Bankruptcy Court and serve upon the United States Trustee a quarterly financial report.   Any administrative ad valorem tax claims shall be paid pursuant to otherwise applicable state law.

**5.02   Professional Fee Administrative Claims.**   All persons that are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court on or as soon as reasonably practicable following the later of the Effective Date or the date on which the order allowing such Claim becomes a Final Order, or upon such other terms as may be mutually agreed upon between such holder of an Allowed Professional Fee Claim and the Reorganized Debtor.

**Treatment of Allowed Administrative Expenses**

Allowed Administrative Expenses will be paid in full once Allowed, on or before the Effective Date, or at a later date as set by the Court if the allowance process extends beyond the Effective Date.   Provided, however, that the holder of an Allowed Administrative Expense may agree to a different treatment.

**Treatment of Allowed Priority Claims**

Allowed Priority Claims will be paid by the Reorganized Debtor once Allowed over five (5) years with interest on such amounts at the rate of 12% per annum until paid in full.   The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full. There are no priority claims.

**Title 28 U.S.C. Section 1930 Fees**

Debtor shall pay all fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Debtor is otherwise released from such obligations by the

Court.

### Claims against Jon Bangash, 16-41526-btr

The Claims and Interests classified in Article IV hereof shall be treated in the manner set forth in this Article V.

## Class 1: Allowed Administrative Claims

Class 1 Claims will be paid once Allowed in full by the Debtor before the Effective Date. These claims are priority claims pursuant to Section 507(a)(2) of the Bankruptcy Code.  These claims include claims for Debtor's attorney's fees and U.S. Trustee's fees.  U.S. Trustee's fees must be paid until the case is closed.  The Debtor must file quarterly reports following confirmation and until the case is closed. The Class 1 Claims may agree to a different treatment.

The Class 1 Claims are not Impaired and the holders of the Class 1 Claims are **not** entitled to vote to accept or reject the **Plan**.

## Class 2: Allowed Secured Claims of Ad Valorem Taxing Authorities

Class 2 shall consist of the Allowed Secured Claims of Ad Valorem Taxing Authorities on the Debtor's real and personal property which accrued on or prior to January 1, 2016 and through December 31, 2016 (the **"Class 2 Claims"**) in the pre-petition amounts as follows:

| | |
|---|---|
| Dallas County | $18,341.13 |
| Irving ISD | $11,820.36 |
| Tarrant County | $16,933.02 |

 The Class 2 Claims will be treated once Allowed over 60 months from the Petition Date.  These creditors shall retain their liens to secure their claims until paid in full under this Plan. The Class 2 Claims shall accrue interest from the Petition Date at the rate of 1% per month through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full. Class 2 Claims shall receive all penalties and interest that accrue on post-petition ad valorem taxes if the taxes are not paid prior to the state law delinquency date.

Payments shall commence on the 5th day of the month following the Effective Date. The actual repayment period is 36 months.

In the event that the Debtor dispute such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed.  While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed.

The 2017 and 2018 liens that secure all amounts ultimately owed are specifically retained and that the plan provides that post-petition taxes will be paid without the tax authorities filing

and serving an administrative expense claim and request for payment as a condition of allowance.

The 2017 taxes (and accrued penalties and interest, as applicable) will be paid in full within 60 days following the Effective Date.

In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the Debtor. Such default shall be cured within 10 business days of the date of transmission of such notice of default. In the event the default is not cured, the Class 2 Claimants shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two notices of default. Upon a third event of default, the Class 2 Claimants shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default.

These claims are secured claims. These creditors shall retain their liens to secure their claims until paid in full under this Plan. The 2018 taxes shall be paid when due.

Class 2 Claims are Impaired by the Plan. The holders of Class 2 Claims are entitled to vote to accept or reject the Plan.

**Class 3: Allowed Secured Claims of Propel Financial Services, LLC**

Propel Proof of Claim No. 13 is supported by a Property Tax Payment Agreement executed by the Debtor on February 27, 2016, in the original principal amount of $20,836.42 (the "First Note"). As of August 29, 2016 (the "Petition Date"), Propel alleges that the amount owing under the First Note is $19,700.94. The First Note is secured by a Tax Lien Contract dated February 27, 2016, and tax liens transferred to Propel pursuant to Sworn Document Authorizing Transfer of Tax Lien and Certified Statement of Transfer of Tax Lien (together the "First Note Security Documents"). Since the Petition Date, the Debtor has made payments (the "First Note Post-Petition Payments") to Propel which have been applied to the amounts due under the First Note.

Propel Proof of Claim No. 14 is supported by a Property Tax Payment Agreement executed by the Debtor on February 27, 2016, in the original principal amount of $37,784.55 (the "Second Note"). As of the Petition Date, Propel alleges that the amount owing under the Second Note is $35,635.97. The Second Note is secured by a Tax Lien Contract dated February 27, 2016, and tax liens transferred to Propel pursuant to Sworn Document(s) Authorizing Transfer of Tax Lien and Certified Statement(s) of Transfer of Tax Lien (together the "Second Note Security Documents"). Since the Petition Date, the Debtor has made payments (the "Second Note Post-Petition Payments") to Propel which have been applied to the amounts due under the Second Note.

Propel Proof of Claim No. 15 is supported by a Property Tax Payment Agreement executed by the Debtor on February 27, 2016, in the original principal amount of $15,944.92 (the "Third Note"). As of the Petition Date, Propel alleges that the amount owing under the Third Note is $15,101.83. The Third Note is secured by a Tax Lien Contract dated February 27, 2016,

and tax liens transferred to Propel pursuant to Sworn Document Authorizing Transfer of Tax Lien and Certified Statement of Transfer of Tax Lien (together the "Third Note Security Documents"). Since the Petition Date, the Debtor has made payments (the "Third Note Post-Petition Payments") to Propel which have been applied to the amounts due under the Third Note.

Because Propel is oversecured, the amount owed to Propel relating to Propel Proof of Claim Nos. 13, 14 and 15 are entitled to bear interest at the rate of interest provided for under the First Note, Second Note, and Third Note from and after August 29, 2016 and to accrue costs, charges and fees pursuant to 11 U.S.C. § 506(b). Propel shall file an application requesting allowance of any attorney's fees under 11 U.S.C. § 506(b) relating to Propel Proof of Claim Nos. 13, 14 and 15 within thirty (30) days following entry of an order confirming this Plan.  The Debtor shall file any objection to Propel Proof of Claim Nos. 13, 14, 15, or Propel's application under 11 U.S.C. § 506(b) relating to Propel Proof of Claim Nos. 13, 14 and 15 on or before forty-five (45) days following entry of an order confirming this Plan.  If no such objection is filed, Propel Proof of Claim Nos. 13, 14, 15, and all amounts requested by Propel under 11 U.S.C. § 506(b) relating to Propel Proof of Claim Nos. 13, 14 and 15 shall be deemed to be fully and finally allowed. Any allowed amount of Propel's claim relating to Propel Proof of Claim Nos. 13, 14 and 15 (together with interest, costs, charges and fees pursuant to 11 U.S.C. § 506(b) or as otherwise provided in the First Note, Second Note and Third Note) shall be paid in accordance with the First Note, Second Note and Third Note, save and except the following:

   a. Payments from and after the Effective Date will begin on the first day of the month following the Effective Date and will continue on the same day of each month thereafter for a term of sixty (60) months;

   b. The "Maturity Date" is the first day of the month in the sixtieth month after the Effective Date; and

   c. The Debtor's monthly payments will be in an amount necessary to fully amortize the allowed amount of Propel's claim relating to Propel Proof of Claim No. 13, 14 and 15 (together with interest, costs, charges and fees pursuant to 11 U.S.C. § 506(b)) as of the Effective Date over a period of sixty (60) months, together with interest from and after the Effective Date at the Annual Interest Rate (as defined in the First Note, Second Note and Third Note). In the event of a default, the Default Interest Rate (as defined in the First Note, Second Note and Third Note) will be applicable.

Propel shall retain all its liens pursuant to the First Note Security Documents, Second Note Security Documents and Third Note Security Documents on Debtor's properties in its current lien priority to secure repayment of amounts to be paid to Propel under the First Note, Second Note and Third Note.  All other terms of the First Note, Second Note and Third Note and the First Note Security Documents, Second Note Security Documents and Third Note Security Documents shall remain in full force and effect except as modified by this Plan.  The Class 3 Creditor is impaired under this Plan.  Confirmation of the Plan shall constitute the Bankruptcy Court's authorization, *nunc pro tunc*, of all First Note Post-Petition Payments, Second Note Post-Petition Payments, and Third Note Post-Petition Payments made by the Debtor to Propel pursuant to 11 U.S.C. § 363(b) and a finding that such First Note Post-Petition Payments, Second Note Post-Petition Payments, and Third Note Post-Petition Payments have been indefeasibly

paid notwithstanding any avoidance powers of the Debtor or any subsequently appointed trustee.

Class 3 Claims are Impaired by the Plan. The holders of Class 3 Claims are entitled to vote to accept or reject the Plan.

### Class 4: Allowed Priority Claim of the Internal Revenue Service

Class 4 shall consist of the Allowed Priority Unsecured Claims of the Internal Revenue Service in the estimated amount of $0.00.

a.   The Class 4 Claims shall be paid in full over 60 months at an interest rate of 4.25% per annum. Payments shall commence on the first day of the month following the Effective Date and continue on the first day of each month thereafter until paid in full.

b.   Events of Default for IRS. The occurrence of any of the following shall constitute an event of default under the Plan:

1.   Failure to Make Payments. Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan debt. However, due to the size and ongoing nature of the IRS's claim, upon a default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:

(A)   If the Debtor or its successor in interest fails to make any plan payment, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Debtor or their successor in interest failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(B)   If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Debtor or the successor in interest.

(C)   If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The

IRS shall only be required to send two notices of default, and upon the third event of Default, the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor.  The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: IRS, 1100 Commerce Street, Mail Code 5027 DAL, Dallas, Texas 75242 attn Leo Carey.

(D)   The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS.  The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.

c.     The Class 4 Claims are Impaired and the holders of the Class 4 Claims are entitled to vote to accept or reject the Plan.

**Class 5: Allowed Secured Claim of Deutsche Bank – 1403 Travis Cir – Homestead**

Class 5 shall consist of the Allowed Secured Claim of Deutsche Bank in the estimated amount of $357,749.29.

This claim shall be paid once Allowed as follows:

a.     This Claim is an Allowed Secured Claim and shall be for an amount of $357,749.29.  This claim will be paid in ordinary course according to the terms of the Mortgage.  Any arrears will be paid over 60 months with interest on such arrears at 5% per annum.  This is a non-escrowed loan. The Debtor will maintain insurance on the Property, and pay post-petition property taxes annually. The first payment is due on the first day of the first month following the Effective Date and all subsequent payments shall continue on the first day of each month thereafter until the allowed amount of the claim is paid in full.

b.     Deutsche Bank shall be secured for an Allowed Secured Claim on the property located at 1403 Travis Circle (the "Collateral"), in the amount of $357,749.29 as of Confirmation Date. This amount does not take into consideration any payments made since the Petition was filed.

c.     This claim is a secured claim. The creditor shall retain its liens to secure its claims until paid in full under this Plan.  Any unsecured claim of Deutsche Bank shall be treated in Debtor's Allowed General Unsecured Claims Class below.

d.     There shall be no prepayment penalty if this Claim is paid early.

e.     Should Debtor default on making the required monthly payments Deutsche Bank shall send a written notice of default, via certified mail, to Debtor with a copy to Debtor's bankruptcy attorney, giving Debtor 14 days from the date of the mailing of the notice of default to cure such default.

f.     Debtor shall be entitled to three notices of default and right to cure.  Upon the issuance of the fourth notice of default, the automatic stay will lift without further order of the Court and Deutsche Bank may pursue its state law remedies.

g.     Should this Section of the Plan for treatment of Deutsche Bank contradict any other provision in the Plan, the provisions of this Section shall control.

h.     The Class 5 Claim is Impaired and the holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

**Class 6: Allowed Secured Claim of Guaranty Bank and Trust**

Class 6 shall consist of the Allowed Secured Claim of Guaranty Bank and Trust in the estimated amount of $1,909,483.26.

This claim shall be paid once Allowed as follows:

a.     This Claim is an Allowed Secured Claim and shall be for an amount of $1,909,483.26.

b.     This claim shall be paid in accordance with the existing loan documents, with the payments of principal and interest due on the 5th day of each month. The current maturity date of May 24, 2036 shall remain in effect.

c.     Arrears: The Debtor has approximately two months of pre-petition arrears, which shall be repaid at a rate of $1,000.00 per month for 27 months, with the balance due in the 28th month.

d.     Guaranty Bank and Trust be secured for an Allowed Secured Claim on the real property located at 3100 Las Vegas Trail and 1717 W. Walnut Hill (the "Collateral"), in the amount of $1,909,483.26 as of Confirmation Date. Any unsecured claim of Guaranty Bank and Trust shall be treated in Debtor's Allowed General Unsecured Claims Class below. The Debtor shall pay the 2018 taxes on the real property securing the claim of Guaranty Bank and Trust when due and no later than January 31, 2019. If such taxes are not paid as provided herein, then it will be a default as to Guaranty Bank and Trust and Guaranty Bank and Trust may pursue, in its sole discretion, any and all available remedies under its loan documents for a default. Guaranty Bank and Trust shall comply with all notice provisions in its loan documents in the event of a default.

e.     There shall be no prepayment penalty if this Claim is paid early.

  f.  Should this Section of the Plan for treatment of Guaranty Bank and Trust contradict any other provision in the Plan, the provisions of this Section shall control.

  g.  This Claim is Impaired and the holder of this Claim is entitled to vote to accept or reject the Plan.

## Class 7: Allowed Secured Claim of First National Bank of Burleson

Class 7 shall consist of the Allowed Secured Claim of First National Bank of Burleson in the estimated amount of $282,822.65.

This claim shall be paid once Allowed as follows:

  a.  This Claim is an Allowed Secured Claim and shall be for an amount of $282,822.65.

  b.  First National Bank of Burleson shall be secured for an Allowed Secured Claim on the property located at 1717 W. Walnut Hill (the "Collateral"), in the amount of $282,822.65 as of Confirmation Date. This amount does not take into consideration any adequate protection payments.

  c.  The interest rate on the unpaid principal balance owed to FNBB shall bear interest at Prime Rate plus one percent floating with a floor of 6% (under no circumstances will it go below 6%). "Prime Rate" means the prime rate as published from time to time in the Money Rates Table of The Wall Street Journal, and if more than one prime rate is published, the highest shall be used. Interest shall be computed on a 365/360 simple interest basis, which means applying the ratio of the annual interest rate over a year of 360 days times the outstanding principal balance, times the actual number of days the principal balance is outstanding, unless such calculation would result in a usurious rate, in which case interest shall be computed on a per annum basis of a year of 365 days or 366 days in a leap year, as the case may be.

  d.  The principal balance owed to FNBB shall be amortized over 10 years to be paid in monthly payments. Despite this amortization, on the 60th month the principal balance and all other charges such as late fees, legal fees, etc., will come due in a lump sum.

  e.  All other provisions of the Promissory Note and Deed of Trust shall remain unchanged and valid.

  f.  This claim is a secured claim. The creditor shall retain its first lien on the Collateral until paid in full under this Plan. Any unsecured claim of First National Bank shall be treated in Debtor's Allowed General Unsecured Claims Class below.

g.     There shall be no prepayment penalty if this Claim is paid early.

h.     Should this Section of the Plan for treatment of First National Bank contradict any other provision in the Plan, the provisions of this Section shall control.

i.     The Class 7 Claims are Impaired and the holders of the Class 7 Claims are entitled to vote to accept or reject the Plan.

j.     Should Debtor default on making the required monthly payments FNBB shall send a written notice of default, via certified mail, to Debtor with a copy to Debtor's bankruptcy attorney, giving Debtor 14 days from the date of the mailing of the notice of default to cure such default.

k.     Debtor shall be entitled to two notices of default and right to cure.  Upon the issuance of the third notice of default, the automatic stay will lift without further order of the Court and FNBB may pursue its state law remedies.

**l.**     An event of default as to the Allowed Secured Claims of Propel Financial Services, LLC (Class 3), is an event of default as against FNBB.

## Class 8: Allowed Secured Claim of National Bank of Texas

Class 8 shall consist of the Allowed Secured Claim of National Bank of Texas in the estimated total amount of amount of $33,335.76.  This claim shall be paid once Allowed as follows:

a.     These Claims are Allowed Secured Claim and shall be for an amount of $33,335.76.  This claim shall be paid out fully over a period of 48 months, with interest at a rate of 3.99% per annum, from and after the Confirmation Date. Payments (constituting payments of both principal and interest) shall be made in equal monthly payments based on a standard 4-year amortization.  The first payment is due on the fifth day of the first month following the Effective Date and all subsequent payments shall continue on the fifth day of each month thereafter until the allowed amount of the claim is paid in full.

b.     National Bank of Texas shall be secured for an Allowed Secured Claim on the Debtor's personal property identified as 2014 BMW 650X (the "Collateral"), in the amount of $33,335.76 as of Confirmation Date. This amount does not take into consideration any adequate protection payments.

c.     This claim is a secured claim. The creditor shall retain its liens to secure its claims until paid in full under this Plan. Any unsecured claim of National Bank of Texas shall be treated in Debtor's Allowed General Unsecured Claims Class below.

d.     There shall be no prepayment penalty if this Claim is paid early.

e.      Should this Section of the Plan for treatment of National Bank of Texas's Claim contradict any other provision in the Plan, the provisions of this Section shall control.

f.      The Class 8 Claims are Impaired and the holders of the Class 8 Claims are entitled to vote to accept or reject the Plan

## Class 9: Allowed Unsecured Non-Dischargeable Claim of John Pappas

a.      Class 9 shall consist of the Allowed Unsecured Non-Dischargeable Claim of John C. Pappas in the estimated total amount of $2,000,000.00.  The claim of Pappas shall be bifurcated.  The $2,000,000 claim for punitive damages under the Judgment shall be placed in this Class Nine.  The balance of the Allowed Unsecured Non-Dischargeable Claim of Pappas in the amount of $2,290,805.97 shall be treated in Class Ten of the Plan.  This Claim 9 is a subordinated non-discharged unsecured class and shall receive no payments under this Plan unless and until the Class Ten Allowed Claims are paid in full.

b.      This class is Impaired and the holder of a Claim in this class is entitled to vote to accept or reject the Plan.

## Class 10: Allowed General Unsecured Claims

Class 10 shall consist of the Allowed General Unsecured Claims of the Debtor.

a.      The Claims in this class will be paid by the Reorganized Debtor once Allowed over 60 months on a Pro Rata basis out of $2,500.00 per month, for a total of $150,000.00. The first payment is due on the first day of the first month following the Effective Date and all subsequent payments shall continue on the first day of each month thereafter until the allowed amount of the claim is paid in full. In the event that allowed administrative claims (Class 1) are not paid in full by the Effective Date, then payments to Class 10 will not begin until the Class 1 claims are fully paid. The Debtor has agreed to commit $150,000 of his exempt homestead sales proceeds to secure and guaranty the payments to the unsecured creditors in this Class under the Plan. Such funds shall not be subject to collection or execution by the creditors in this case. This Class shall also be funded from the proceeds from the sales of Non-Exempt Properties of the Debtor as described herein.  This Class 10 will be paid in full prior to any payment to Class 9 under this plan.  Class 10 claims shall also be paid any amounts identified in section 6.01 of this Plan if any such sale occur.

b.      The total of claims in this class is estimated at $2,878,361.92

c.      This class is Impaired and the holder of a Claim in this class is entitled to vote to accept or reject the Plan.

    d.    Insider Unsecured Claims, to the extent they exist, shall be paid nothing under this Plan.

**Class 11: Individual Debtor.**

On the Effective Date, all exempt personal and real property shall be retained by the individual Debtor. Debtor's monthly income shall be contributed to make the payments called for by this Plan. The Debtor has agreed to commit $150,000 of his exempt homestead sales proceeds to secure and guaranty the payments to the unsecured creditors in this Class under the Plan. Such funds shall not be subject to collection or execution by the creditors in this case. The Debtor believes that the Plan does not violate the absolute priority rule and is consensual as to the unsecured creditors.

## ARTICLE VI:
## MEANS FOR IMPLEMENTATION OF PLAN

**6.01** **Implementation of Plan.** This Plan will be implemented, pursuant to Section 1123(a)(5) of the Code, by the commencement of payments as called for above. Projections for this Plan are attached to the Disclosure Statement and incorporated herein by this reference as if set forth in full for all purposes. For the life of the Plan the Debtor shall file quarterly reports with the Court disclosing his income and expenses. The first report shall be filed the end of the quarter in which the Plan is Confirmed. Such reports shall be filed by the 20th day of the month following the end of a calendar quarter. The Debtor shall have 180 days following the Confirmation Date to commence selling his Non-Exempt Property. Such sales efforts shall include reasonable marketing efforts, compiling marking information and any and all necessary selling information that would effectively market and sell such assets. Such information will be provided to John Pappas through his counsel so he can evaluate the prospects of sale and efforts being made. Nothing herein prevents him from also locating buyers for such assets. At such time as the Debtor locates a prospective buyer and obtains a signed LOI and/or contract of sale he shall provide same to John Pappas' counsel, along with all marketing materials to the extent not previously provided. John Pappas shall have 14 days from receipt of such information to approve any such sales of Non-Exempt assets. To the extent such approval is with held, the Court may consider an application to sell such asset(s) on notice to the creditors in this case. The issue for the Court shall be the reasonableness of the marketing efforts and the price obtained based on such reasonable efforts compared with the value of such asset at the time of sale. To the extent such Non-Exempt Property is sold the funds shall be paid to the Class 10 Claimants for a pro rata distribution to such claimants with Allowed Claims after the payment of all secured indebtedness on such property being sold and reasonable and necessary costs of sale (such as broker's commissions, title insurance fees and costs, legal fees and costs); such payments shall be in addition to payments stated in the treatment of Class 10.

Upon the Effective Date, all property of the Debtor and its Estate shall vest in the Debtor, subject to the Allowed Secured Claims in this Plan.

The funds necessary for the satisfaction of the creditors' claims shall be generated from Debtor's income from continued operation of the rental properties.

**6.02**    Notwithstanding any provision of this Plan, or any amendments to this Plan as confirmed by the Bankruptcy Court, or the Confirmation Order, without delivering written notice to John Pappas, the Reorganized Debtor or any successor thereto shall be prohibited from and shall not (a) sell any Non-exempt Property, (b) encumber in any way whether by action or inaction, any Non-Exempt Property.

## ARTICLE VII:
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.01    Assumption of Executory Contracts and Unexpired Leases.**  On the Effective Date, the all the Debtor's pre-petition executory contracts and unexpired leases are **ASSUMED** by the Reorganized Debtor pursuant to section 365 of the Bankruptcy Code, to the extent that they are in fact executory contracts.

**7.02    Payments Related to Assumption of Executory Contracts and Unexpired Leases**.  Any monetary amounts by which the executory contracts and unexpired leases to be assumed pursuant to the Plan are in default (**"Cure Cost"**) shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment on the Effective Date, or by such other treatment which shall have been agreed to in writing.  Any dispute regarding (i) the nature or amount of the Cure Cost, (ii) the ability of the Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the executory contract or unexpired lease to be assumed, or (iii) any other matter pertaining to assumption, such matters shall be determined prior to or at the Confirmation Hearing.  Otherwise, the Confirmation Order of the Plan shall be deemed equivalent to a finding by the Bankruptcy Court that the foregoing provisions for curing arrearages and monetary defaults are reasonable and that no additional adequate assurance of future performance need be furnished by the Debtor.

**7.03    Rejection of Certain Executory Contracts and Unexpired Leases.**    All executory contracts and unexpired leases which have not been assumed by the Reorganized Debtor, or specifically assumed above, shall be deemed **REJECTED** on the Effective Date.  The Confirmation Order shall operate as an order of rejection under section 365 of the Bankruptcy Code with respect to all such executory contracts and unexpired leases.  Any executory contract or unexpired lease which is subject to a separate motion to assume or reject shall be governed by the results of that motion.

**7.04    Bar Date for Claims Based on Rejection**.  If the rejection of an executory contract or an unexpired lease by the Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Debtor or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; *provided, however*, that any Rejection Claim based upon the rejection

of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b)(6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor of any objections to such Claim if asserted.

## ARTICLE VIII:
## ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS

**8.01    The Debtor's Causes of Action**.  Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Debtor for the benefit of the Creditors subsequent to the Effective Date.  This Plan shall not estop the Debtor from asserting any claim or cause of action whether disclosed or not. However, the Debtor shall retain all TUFTA claims (including claims to recover the property at 8230 Esters Blvd. Irving, Texas) and shall prosecute them for the benefit of the Unsecured Creditors.  If such claims are not prosecuted in the 75 days following the Confirmation Date then such claims shall be transferred to a Plan Disbursing Agent, Chris Moser, or a person selected by the majority in dollar amount of the Unsecured Creditors, who shall then pursue such claims for the benefit of the Unsecured Creditors.

**8.02    Objections to Claims.**  Any party authorized by the Bankruptcy Code may object to the allowance of Pre-petition Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed.  All Contested Claims shall be litigated to Final Order; *provided, however,* that the Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court.  Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim.  If a Claim is disputed in whole or in part because the Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim.  In addition, any party authorized by the Bankruptcy Code, at any time, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

## ARTICLE IX:
## EFFECT OF CONFIRMATION

**9.01** **Discharge** **and** **Release** **of** **Debtor**.   Pursuant to Bankruptcy Code Section 1141(d), confirmation of this Plan <u>does</u> <u>not</u> discharge the Individual Debtor. The Individual Debtor may seek a discharge of dischargeable claims after the claims are paid in accordance with the terms of the Plan by reopening the case, paying the reopening fee and requesting a discharge from the Court.

Notwithstanding any provision of this Plan, or any amendments to this Plan as confirmed by the Bankruptcy Court, or the Confirmation Order, 180 days from the Confirmation Date (a) Pappas shall have the right to exercise any and all rights of Pappas as judgment creditor under the Judgment under Texas law or any other applicable law against the Debtor, the Reorganized Debtor and any property of the Debtor or the Reorganized Debtor and (b) no provision of the Plan or any order of this Court, including, but not limited to the Confirmation Order shall stay, modify, limit or in any way restrict, waive, terminate or alter any of the rights of Pappas under any subsection of this Paragraph 9.01.

The confirmation of the plan shall not discharge Debtor from any debt excepted from discharge under Section 523 of the Code, including the Allowed Claims of John Allowed .

**9.02** **Legal** **Binding** **Effect**.   The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**9.03** **Discharge**.  Confirmation of the Plan shall result in the inability to commence or continue any judicial, administrative, or other action or proceeding on account of any Pre-Petition Date Claims against the Debtor, except to the extent that such claims are not discharged by this Plan and to the extent that the Debtor fails to comply with the terms of the Plan.  In such cases the Allowed Claimants may seek to recover post-confirmation from the Debtor or his assets.  The denial of discharge to a claim in this case results in the termination of the stay under 11 U.S.C. Section 362(c)(2)(C) upon entry of the order of confirmation.  The claim of John Pappas falls into this category of claims.

Each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce its rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.

## ARTICLE X:
## MISCELLANEOUS PROVISIONS

**10.01** **Request** **for** **Relief** **Under** **Bankruptcy** **Code** **Section** **1129**.  In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), the Debtor reserves the right to, and does hereby request the Bankruptcy Court to

confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**10.02** **Revocation**.  The Debtor reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**10.03** **Effect of Withdrawal or Revocation**.  If the Debtor revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

**10.04** **Due Authorization by Creditors**.  Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**10.05** **Entire Agreement**.  This Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents.

**10.06** **Section 1146 Exemption**.  Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**10.07** **Provisions Governing Distributions**.  All payments and distributions under the Plan shall be made by the Debtor as indicated.  Any payments or distributions to be made by the Debtor pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court.  Any payment or distribution by the Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed).  All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date.  After such date, all unclaimed property shall remain the property of the Debtor and the Claim of any other holder with respect to such unclaimed property shall be discharged and

forever barred.

Checks issued by the Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made directly to the Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Debtor.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**10.08**   **Governing Law.**   Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**10.09**   **Default**. Unless otherwise stated in this Plan, if the Debtor fails to satisfy any of the obligations under this Plan and such default is not cured within 30 business days of the date of transmission of notice of the default to the Debtor, then the defaulted party may pursue all of its remedies outside of the Bankruptcy Court, including, but not limited to, foreclosure on its lien(s) on property. For purposes of this provision, notice shall be provided to the Debtor, c/o Joyce Lindauer, Esq. via facsimile at (972) 503-4034.

## ARTICLE XI:
## MODIFICATION OF THE PLAN

**11.01**   The Debtor may propose amendments to or modifications of this Plan at any time prior to Confirmation, upon notice to all parties-in-interest. After Confirmation, the Debtor may, with approval of the Court and so long as it does not materially or adversely affect the interest of creditors, modify to remedy any defect or omission or reconcile any inconsistencies in the Confirmation Order in such manner as may be necessary to carry out the purposes and effect of this Plan.

## ARTICLE XII:
## RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan or the Effective Date having occurred, the Court will retain jurisdiction for the following purposes:

**12.01**   **Allowance of Claims**. To hear and determine the allowability of all Claims upon objections to such Claims.

**12.02**   **Executory Contracts and Unexpired Leases Proceedings**. To act with

respect to proceedings regarding the assumption of any executory contract or unexpired lease of the Debtor pursuant to Section 365 and 1123 of the Code and Article VII of the Plan.

**12.03     Plan Interpretation**.   To resolve controversies and disputes regarding the interpretation of the Plan.

**12.04     Plan Implementation**.   To implement and enforce the provisions of the Plan and enter orders in aid of confirmation and implementation of the Plan.

**12.05     Plan Modification**.   To modify the Plan pursuant to Section 1127 of the Code and applicable Bankruptcy Rules.

**12.06     Adjudication of Controversies**.   To adjudicate such contested matters and adversary proceedings as may be pending or subsequently initiated in the Court against the Debtor.

**12.07     Injunctive Relief**.   To issue any injunction or other relief as appropriate to implement the intent of the Plan, and to enter such further orders enforcing any injunctions or other relief issued under the Plan or in the Confirmation Order.

**12.08     Interpleader Action**.   To entertain interpleader actions concerning assets to be distributed or other assets of the Estate.

**12.09     Correct Minor Defects**.   To correct any defect, cure any omission or reconcile any inconsistency or ambiguity in the Plan, the Confirmation Order or any document executed or to be executed in connection therewith, as may be necessary to carry out the purposes and intent of the Plan, provided that the rights of any holder or an Allowed Claim are not materially and adversely affected thereby.

**12.10     Authorization of Fees and Expenses**.   To review and authorize payment of professional fees incurred prior to the Effective Date.

**12.11     Post-Confirmation Orders Regarding Confirmation**.   To enter and implement such orders as may be appropriate in the event the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated.

**12.12     Final Decree**.   To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

**12.13.     Reopening**. To reopen the case to grant Jon Bangash a discharge.

Respectfully Submitted,

  _/s/ Joyce W. Lindauer_____
Joyce W. Lindauer
State Bar No. 21555700
Sarah Cox
California State Bar No. 245475
Joyce W. Lindauer Attorney, PLLC
12720 Hillcrest Road, Suite 625
Dallas, Texas 75230
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR


/s/ Jon Bangash_____
Debtor